354 F.2d 541
 UNIVERSAL MARION CORPORATION, Appellant,
v.
The WARNER & SWASEY COMPANY, Ray Ferwerda, Sophia Louise Ferwerda, individually and as Guardian for Frederick Martin Ferwerda, Alice Rose Olsen, Sophia Louise Rebell, Raymond Koop Ferwerda, and Frederick Martin Ferwerda, by his Guardian Sophia Louise Ferwerda, Appellees.
 No. 7979.
 United States Court of Appeals Tenth Circuit.
 December 30, 1965.
 
 Robert McKay, New York City (Harry C. Jones, III, New York City, Douglas McHendrie, of Grant, Shafroth, Toll & McHendrie, Denver, Colo., Pennie, Edmonds, Morton, Taylor & Adams, New York City, with him on the brief), for appellant.
 J. Herman Yount, Jr., Cleveland, Ohio, and Robert H. Harry, Denver, Colo. (James T. Hoffmann, Cleveland, Ohio, were on the brief for The Warner & Swasey Co., George S. Baldwin, Cleveland, Ohio, on the brief for other appellees, and L. Richard Freese, Jr., of Davis, Graham & Stubbs, Denver, Colo., were on the brief), for appellees.
 Before PICKETT, LEWIS and HILL, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 This is a patent infringement suit brought by Warner & Swasey Company, exclusive licensee of Patent No. 2,541,045, along with the owners of the patent, against Universal Marion Corporation, which manufactures and sells the accused machine. The defense was invalidity and non-infringement. It was alleged that the accused machine infringed Claims 2, 6, 7, 8, 9 and 16 of the patent. After an exhaustive discussion of the facts and the law relating thereto,[1] the trial court found the patent to be valid and all the aforesaid claims, except Claim 2, to be infringed by the "Grademaster" machine manufactured by the appellant, and entered judgment enjoining further infringement. On appeal, Universal Marion Corporation presents only the question of the validity of the patent. It contends that the patent is invalid for two reasons, (1) that the claims in suit did not define a patentable invention over the prior art, and (2) that the claims in suit are invalid because there had been a prior public use of the invention by the patentee more than one year prior to the filing of the application for a patent.
 
 
 2
 The machine disclosed by the patent is a multi-purpose material-moving device used principally in the construction and maintenance of roads, although its use is not limited to that purpose. It is designed for digging, loading, scraping and grading all kinds of surfaces, including the sloping of banks of any grade and the movement of material at various angles. Many of the purposes for which the machine is used may be accomplished by single-purpose machines, such as shovels, bull-dozers, back hoes and draglines.[2]
 
 
 3
 Ray Ferwerda and his brother Koop were construction contractors, engaged in the earth-moving business, which included the finishing and repair of road grades. From their experience they perceived the need for a single multi-purpose apparatus which would do the work that was then performed by a variety of single-purpose machines and by hand labor. They were the first to devise a material-moving machine with a digging or scraping implement pivoted on the outer end of a rotatable, telescoping boom which could be extended or retracted by a hydraulic mechanism separate from the boom, but operatively connected with it and capable of handling heavy loads. The working tool so attached to the extensible section of the boom permitted a wrist-like movement and could be held in any desired position by the utilization of hydraulically controlled elements operating in pairs and adapted so as to be moved relatively to each other under various operative conditions.[3] A necessary rotating platform can be mounted on the average truck frame. It carries the entire boom assembly consisting of the metal boom cradle, engine and pumps, and an operator's cab, together with the hydraulic cylinders which control the movements of the boom. A turntable arrangement provides support for the rotating platform for the sluing, or swinging, of the boom on a horizontal plane. The trial court described the operation of the boom and the implement on the extended end, as follows:
 
 
 4
 "The machine employs a telescoping boom for supporting and operating an implement, such as a bucket. The telescoping feature enables the tool to be extended and retracted towards and away from the material to be worked upon. The boom may be oscillated about its axis so as to tilt the tool for working at various angles. The boom as a whole may be raised or lowered, and it may also be rotated by rotating the platform on which it is mounted. Means are also provided to give the tool what is called `wrist action', a movement roughly akin to raising and lowering one's hand while bending at the wrist. All of these movements are accomplished by hydraulic means. The machine is thus capable of five distinct movements, which enable it to accomplish the various purposes for which it was constructed." Warner & Swasey Co. v. Universal Marion Corp., 237 F.Supp. 719, 722.
 
 
 5
 The Ferwerdas completed their first machine in 1942, while on a road job near Cleveland, Ohio. This machine employed a rotatable telescopic boom concept as defined in the patent, but lacked many of the later features. Following an hour-long experimental application in the fall of 1942, the machine was returned to the shop for modification, after which it was again used for about an hour and a half and was still found to be unsatisfactory. During the winter of 1942-1943, additional changes were made, particularly in the type and support for the boom. The machine with the new boom arrangement was used on a construction project at Ravenna, Ohio in March of 1943. The use of the machine on the Ravenna job extended up to mid-June of 1943; its actual use was for about six weeks. During this period it was discovered that many additional improvements would be necessary. In the fall of 1943, the machine was taken to a project in Pennsylvania where it was used "for a couple of weeks." No further use was made of this particular machine. During the next six months it was completely re-engineered and re-designed. Production drawings were made of this last model, and the patent was applied for on May 15, 1944. Five machines of the design shown in the patent were made under the trade-name of "Gradall" and offered for sale. Warner & Swasey acquired the exclusive rights to the patent early in 1946. Since it was first offered for sale on the market, the machine has been a commercial success.
 
 
 6
 In support of its contention that the claims of the patent in suit were invalid because they did not define an invention over the prior art, Universal Marion Corporation cites three former patents — United States Patents, Byrne No. 1,526,830, issued February 17, 1925; Wheeler Patent No. 1,987,982, issued January 15, 1935; and British Patent, Nixon, No. 2,958, accepted January 1, 1898. None of these patents disclose a material-moving machine which embodies a rotatable telescopic boom with the load-bearing implement on the outer end of the extensible section similar to that displayed in the patent. The machines defined in the Byrne, Wheeler and Nixon patents have an extension system with a tool or implement on the end of a piston rod which operates in and out of a hydraulic cylinder by which an extension or retraction of the piston rod may be accomplished. While movement of a piston rod in and out of a cylinder through a packing gland has some of the features of telescopic action and is subject to longitudinal rotation, these features do not correspond to the telescopic boom of the Ferwerda machine and do not teach its principle. The trial court found that an apparatus with a working tool on the end of a piston rod would not withstand the strain of heavy loads, while in the Ferwerda machine the weight and strain of the load was transmitted to the boom. The court stated that it was "satisfied from the testimony that the connection of a load bearing implement to the end of a piston rod, as demonstrated by most of the prior art, will not accomplish the purposes of the Ferwerda invention." Warner & Swasey Co. v. Universal Marion Corp., supra 237 F.Supp. at 729. There was testimony by an expert witness that the piston rod arrangement cannot function as a boom. Universal Marion's expert witness stated that he did not know of an earth-moving machine which used an implement attached to the end of a piston rod. As the term "boom" is used in the Ferwerda patent, it does not include a piston rod type of extensible section as described in the Byrne, Wheeler and Nixon patents, or any of the prior art referred to. There was ample evidence to sustain the trial court's finding that a piston rod will not function as a boom, as that term is used, in the patents before the court.
 
 
 7
 Regularly issued patents are presumed to be valid, and a party asserting invalidity on the ground of anticipation in the prior art, or for any other reason, has the burden of establishing such invalidity by clear and convincing evidence. 35 U.S.C. § 282; King-Seeley Thermos Co. v. Refrigerated Dispensers, Inc., 10 Cir., 354 F.2d 533, and cases cited. We agree with the trial court that the piston rod concept of a material-moving machine does not teach the principle of the telescopic boom contemplated by the Ferwerda patent, and that the burden of proving invalidity has not been sustained.[4] Furthermore, as found by the trial court, the combination of elements in the Ferwerda machine has the requisite novelty of a true combination which constitutes an invention. Warner & Swasey Co. v. Universal Marion Corp., supra, 237 F.Supp. at 734-735. It solved a difficult problem and brought about a new result which workers in the art of material-moving machinery had been unable to accomplish. It added to the art something that was new and useful, which the trial court found was not obvious to one of ordinary skill in the art. 35 U.S.C. § 103; King-Seeley Thermos Co. v. Refrigerated Dispensers, Inc., supra.
 
 
 8
 35 U.S.C. § 102 provides that a person shall be entitled to a patent unless:
 
 
 9
 "(b) The invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for a patent in the United States * * *."
 
 
 10
 It is contended that the use of the early Ferwerda machines constitutes a public use within the meaning of the statute. It is well settled that all uses do not necessarily constitute a public use. "Use by an inventor in good faith for the purpose of testing his apparatus or device for experimental purposes is not public use within the scope of the statute, even though incidental to such use he derives some financial return." Merrill v. Builders Ornamental Iron Co., 10 Cir., 197 F.2d 16, 19. See also, McCullough Tool Co. v. Well Surveys, Inc., supra, 343 F.2d at 393-394. The trial court found that the use of the machine more than one year prior to the application for patent was a good-faith use for experimental purposes and not a public use. 237 F.Supp. 724-725. The finding is sustained by the evidence and is not clearly erroneous.
 
 
 11
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Warner & Swasey Co. v. Universal Marion Corp., D.C., 237 F.Supp. 719
 
 
 [2]
 The patent states the general purpose of the invention to be:
 "This invention, as indicated, relates to a material moving apparatus. More particularly, it relates to a means of more expeditiously carrying out various operations wherein material is elevated and moved to a predetermined position or carried to a distant place of disposal. It is of particular utility for earth-working operations or for handling bulk material, such as sand, gravel, coal, snow, ashes, chemicals, minerals and other similar materials. The apparatus is in the nature of a universal earth-working machine adapted in a single unit to perform functions usually carried out by specialized types of apparatus, such as graders, bull-dozers, slopers, motor patrols, ditchers and the like. This is a continuation in part of our Patent 2,348,796, May 16, 1944."
 
 
 [3]
 The movement was described as being similar to that of the forearm, wrist and hand of a human arm. Combined with the boom mechanism, the wrist-like action was such that the load carrying implement could be independently (1) raised and lowered, (2) swung in a horizontal plane, (3) moved directly to and from the machine, (4) rotated about the line of extension and retraction, and (5) moved on an axis crosswise of the boom
 
 
 [4]
 In discussing the tests for determining whether a patent is anticipated by the prior art, this court said in McCullough Tool Co. v. Well Surveys, Inc., 343 F. 2d 381, 398:
 "In this connection, this court has held that the burden is upon the one asserting anticipation to sustain it by clear and convincing evidence and a patent is to be measured as anticipatory, not by what might be made out of it, but by what it clearly and definitely discloses. Mott Corporation v. Sunflower Industries, Inc., supra. [10 Cir., 314 F.2d 872.] In order for a prior patent to anticipate an invention, it is necessary that all of the elements of the invention or their equivalents be found in one single structure or description, where they do substantially the same work in substantially the same way. Preformed Line Products Co. v. Fanner Mfg. Co., 6 Cir., 328 F.2d 265, cert. denied, 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51. In order for a prior printed publication to anticipate an invention the description contained therein must disclose the complete and operative invention in such full, clear and exact terms as to enable any person skilled in the art to which it pertains to practice the invention to the same extent as he would be enabled to do if the information were derived from a prior patent. Eames v. Andrews, 122 U.S. 40, 7 S.Ct. 1073, 30 L.Ed. 1064; 40 Am.Jur., Patents, § 37, p. 554. In short, a printed publication is to be tested by the same rules as those applicable to a prior patent. 69 C.J.S. Patents § 41, p. 232. Anticipation is strictly a technical defense and unless all of the same elements are found in exactly the same situation and united in the same way to perform an identical function, there is no anticipation. National Lead Company v. Western Lead Products Company, 9 Cir., 324 F.2d 539; Stauffer v. Slenderella Systems of California, 9 Cir., 254 F.2d 127."