**GEORGE R. CHURCHILL COMPANY,** Inc., Plaintiff-Appellant,

v.

**AMERICAN BUFF COMPANY,** Automatic Buff Co., Inc., Duluth Buff Co., Inc., and Speedway Buff Co., Inc., Defendants-Appellees.

No. 15160.

United States Court of Appeals
Seventh Circuit.

July 13, 1966.

Harry W. F. Glemser, Washington, D. C., Robert R. Churchill, Boston, Mass., George N. Hibben, Chicago, Ill., for appellant.

Theodore W. Anderson, Jr., Sidney Neuman, Joseph P. Calabrese, Chicago, Ill., for appellees.

Before MAJOR, Senior Circuit Judge, and KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

George R. Churchill Company, Inc., plaintiff-appellant, the owner of Churchill U.S. Patent No. 2,724,937, relating to a buffing wheel brought this suit in the the District Court against American Buff Company; Automatic Buff Co., Inc.; Duluth Buff Co., Inc.; and Speedway Buff Co., Inc., defendants-appellees, charging infringement of Claims 1, 2 and 4 of the patent. The defendants in a joint answer and counterclaim for declaratory judgment asserted, among other things, the invalidity of the patent. The court, acting pursuant to Rule 42(b) of the Federal Rules of Civil Procedure (28 U.S.C.A.), severed for separate trial the issue of whether the patent was invalid under the provisions of 35 U.S.C.A. § 102(b) because the claimed invention was in public use or on sale more than one year prior to the date of the application for the patent. Following a trial of this issue the court expressed his decision orally, stating his views as to the facts established and the law applicable, and then entered findings of fact and conclusions of law holding the patent invalid because buffing wheels incorporating the alleged invention of the patent were placed on sale and in public use by the plaintiff more than one year prior to the filing date of the application from which the patent matured. The court entered judgment dismissing plaintiff's action on the merits and that defendants recover costs. The plaintiff appealed.

The record discloses that U.S. Patent No. 2,724,937 issued November 29, 1955, on an application filed March 3, 1953. The critical date for the purposes of 35 U.S.C.A. § 102(b) is therefore March 3, 1952.

The District Court found, in substance, that a buffing wheel manufactured by the plaintiff, designated the 40-RT Buff, embodied the invention claimed in the patent and that distribution of this buffing wheel prior to March 3, 1952, made by plaintiff through its distributors to prospective customer-users constituted both a public use and a placing on sale which serve to invalidate the patent.

The main contested issues which emerge from the plaintiff's contentions on appeal may be stated to be (1) whether the trial court's factual finding that the 40-RT Buff embodied the invention claimed in the patent is "clearly erroneous", and, if not so, (2) whether the distribution made of that buffing wheel was merely part of a testing-experimentation program rather than a public use or placing on sale within the meaning of 35 U.S. C.A. § 102(b).

The identity of the 40-RT buffing wheel with the structure of the patent claims was the subject of expert testimony concerning the scope of the claims and the nature and characteristics of the structure of the 40-RT Buff. Consequently, as to this phase of the case Rule 52(a) of the Federal Rules of Civil Procedure (28 U.S.C.A.) applies, and if the court's findings in this connection find support in the evidence they are binding on review. Wahl v. Carrier Manufacturing Co., 7 Cir., 358 F.2d 1, 3; Aerosol Research Company v. Scovill Manufacturing Co., 7 Cir., 334 F.2d 751, 753; Minnesota Mining and Mfg. Co. v. Technical Tape Corp., 7 Cir., 309 F.2d 55, 57; Armour & Co. v. Wilson & Co., 7 Cir., 274 F.2d 143, 151–157.

The patent in suit relates to a buffing wheel having a central hub with radiating fingers or spokes of buffing material. Each finger has a core of twisted strands of fibrous material and a fabric covering,

and the finger has a flattened cross section and is longitudinally stitched to compact the assembly. Finger buffs are widely known and were old in the prior art.

The details of the 40-RT structure as disclosed by the expert testimony as well as the physical exhibit established that it comprises a plurality of radial elements which extend outwardly from a central hub and are stapled to it. Each such finger element includes 40 strands of twisted fibres surrounded by a cloth wrapper and each finger is longitudinally stitched. The fingers or elments are disconnected from one another over a major portion of their length and the longitudinal stitching divides the strands into groups, imparts rigidity to the element, and compresses the groups of strands transversely. The strands of twisted fibres or twine used were treated with liquid latex to help hold the fibres together and to aid buffing compound to adhere thereto.

Claim 1 of the patent reads as follows:

1. A buffing wheel section having radially extending buffing elements and a hub member to which the buffing elements are secured at their inner ends, said buffing elements being disconnected from one another for a major portion of their length inwardly from the periphery of the buffing wheel section, whereby to enable the buffing elements to individually flex during a buffing operation, each buffing element comprising an assembly of twisted strands of fibrous material extending longitudinally of the buffing element; and a fibrous wrapper enclosing said assembly and having longitudinal stitching extending therethrough and subdividing the assembly into separate groups of strands and compressing said groups transversely and imparting an elongated cross section to said buffing element in a direction generally perpendicular to the axis of the buffing wheel section, the separate groups of strands cooperating with one another to impart rigidity to the individual buffing elements to resist deflection in use, and the wrapper and stitching maintaining said groups of strands in substantially the same relative relation throughout the life of the buffing elements.

Claim 2 is dependent from claim 1 and is directed to the feature of the twisted strands of fibrous material being sisal, and of a cross-sectional dimension such as that employed to produce "stout sisal twine". Claim 3 is directed to the feature of stapling the elongate elements or fingers to the hub. Claim 4 reads as follows:

4. A buffing wheel section as defined in claim 1 wherein each buffing element comprises an individual assembly of a relatively large number of cords, with each cord consisting of a few but at least two pretwisted yarns with each yarn twisted around the other yarns forming the cord, the twist of the yarns about one another being in a direction opposite to the twist in the yarns themselves whereby the opposed twists balance one another and impart resistance to any tendency of the fibres or yarns to untwist.

Plaintiff's contention that the 40-RT Buff did not embody the invention claimed in the patent is based on the premise that the expression "an assembly of twisted strands of fibrous material" as used in Claim 1, the only independent claim of the patent, must in the light of the specification be read to mean "laid" material with the result that the patent requires and its scope is limited to structures in which the radiating fingers or individual buffing elements are of laid material, i. e., twine in the construction of which two or more plies of twisted fibre are tightly plied about each other.

The patent specification describes a laid construction as follows:

"Briefly, as is well known in the rope-making art, in producing a 'laid' construction from two or more strands of twisted fibres, the original twist in each strand is maintained and controlled so as to remain substantially

constant during the operation of laying the component strands around one another in producing the twine. * * * Such a 'laid' structure is characterized particularly by the absence of any tendency to untwist, and when attempt is made to untwist the 'laid' twine and the same is released, the twine resumes its 'laid' condition. * * * "

There is expert testimony that:

"An ordinary two-ply twine is not laid, it is just plied loosely, rather loosely by comparison to the laid twine which is plied very hard, making it a very tight twist similar to what you find in rope, regular ship's rope or manila rope."

\*     \*     \*     \*     \*     \*

"The laid material has a very hard finish; it makes it a very hard product which holds together very tight, while the ordinary twisted is more flexible and does not hold as tightly together."

\*     \*     \*     \*     \*     \*

"It feels harder and stiffer and certainly would not untwist as easily."

\*     \*     \*     \*     \*     \*

"It [laid material] is a cord which is tightly twisted and which is what I call dynamically stable. In other words, the individual strands are twisted in one direction and then when we combine the strands we give them a reverse twist so that it is dynamically stable and will not tend to untwist when cut into short lengths."

Plaintiff points to evidence in the record which it represents as disclosing that single-ply twisted twine was used exclusively in the fingers of the 40-RT buffing wheel, that this was sisal twine but not of laid construction, and contends that consequently the structure of the 40-RT Buff did not embody the invention of the patent and the District Court's finding to the contrary is clearly erroneous. But the validity of the conclusion the plaintiff so draws is wholly dependent upon the validity of the premise from which the plaintiff reasoned—that the patent is limited in its scope to a structure in which the assembled "twisted strands of fibrous material" which comprise the finger elements are of laid material.

In this connection our examination of the record convinces us that in addition to the revelations of the patent document itself concerning the kind of fibrous material permissible in the manufacture of the individual buffing elements there is expert witness testimony which serves to give substantial support to the District Court's appraisal of the scope of the patent claims as well as its appraisal of the nature and characteristics of the structure of the 40-RT Buff as each of such appraisals is reflected in the court's findings and in its ultimate conclusion that the 40-RT Buff embodied the invention claimed in the patent. No specific reference to "laid" as distinguished from ordinary "twisted" fibrous material is made in Claim 1, the sole independent claim of the patent. The specification, however, makes it clear that in the manufacture of the individual buffing elements the use of the "laid" form of twisted fibrous material is preferred, and there is expert testimony to the effect that although dependent Claim 4 does not use the term "laid" it does describe and claim a buffing wheel in which the material of the individual buffing elements is an assembly of cords each of which contains at least two pretwisted yarns twisted about each other in the "laid" manner of construction. But in addition to the omission from the independent claim of the "laid" construction as a requirement of the "twisted strands of fibrous material" referred to therein, the specification through the use of the expression "twisted or laid" in contexts where it is evident that "twisted" is used as an alternative to "laid", although the latter is designated as preferable, makes unpersuasive the contention of the plaintiff that the specification uses the word "twisted" as synonomous with "laid" and thereby narrows all of the claims of the patent to read only upon a structure in which the individual buffing elements are of the special twisted construction known as "laid". Moreover, defendants'

expert witness, Dr. Paul L. Hoover, in his testimony interpreting the patent specification expressed the opinion that in general the patent applied to the use of any sort of twisted fibres; that with reference to the fibrous strands "twisted" or "laid" are used as alternatives but with the "laid" form being designated preferable—"but that is not mandatory; it is the preferred form". The witness also identified the 40-RT Buff with the invention claimed in Claim 1 of the patent.

■ We conclude, on this phase of the case, that the District Court's findings are amply supported by the record and the court did not err in its conclusion that the 40-RT Buff embodied the invention claimed in the patent.

We turn to consideration of whether the court erred in its findings, and in its conclusion based thereon, that the 40-RT buffing wheel manufactured by the plaintiff was in public use and on sale prior to March 3, 1952, within the meaning and application of 35 U.S.C.A. § 102(b).

There is no dispute with respect to the distribution plaintiff made of the 40-RT buffing wheel commencing on January 28, 1952. The evidence thereof is in the form of the plaintiff's own records and the testimony of George R. Churchill, the patentee and the president of plaintiff. The opposing contentions of the parties, and plaintiff's assault on the District Court's findings and that court's ultimate conclusion of invalidity of the patent under the provisions of § 102(b), concern the conclusions which are to be drawn from that evidence and the reasonable inferences deducible therefrom. The plaintiff contends that the evidence concerning its distribution of more than 200 of the 40-RT Buffs to various jobbers and customers prior to March 3, 1952, supports only a conclusion that the buffs were sent out solely for testing purposes and as a part of a continuing experi-

mental program which culminated in the development of its 20-RD Buff in which the individual buffing elements are of laid sisal material.[1]

Critical findings of the District Court supported by clear and convincing evidence are that the distribution of the 40-RT Buff prior to March 3, 1952, was "with no restriction as to the manner in which they were to be used" and was "an open and unrestricted sales effort". Evidence supporting these findings includes a showing that the distribution was accompanied by claims of product superiority and a quotation of maximum prices. While the recipient was expected to arrange for a customer test of the buff to determine whether it was satisfactory for the customer's particular use or products there is no showing, either as to the plaintiff's distributor-jobbers or the latter's customers, of any injunction of secrecy or other restriction as to the use or disposition of the buffs. As early as February 1, 1952, the plaintiff wrote to its salesman in Indiana that 6 sections of 40-RT Buffs had been sent him; requested that he "get them tried out"; quoted the maximum selling price to the customer; and extolled the buffs as follows: "[t]hey have flexibility, excellent cut, good life, and leave the work brighter than [the buffs they were designed to compete with]". Churchill in his testimony explains the price quotations as an item in which the prospective customer solicited to make a test would be interested in knowing about before undertaking to give the product a trial. The January and February 1952, distribution of the 40-RT Buffs and the contemporaneous letters to plaintiff's distributor-jobbers followed a test of the buff personally witnessed by Churchill at the Worcester Brass Company, a manufacturer and direct-customer of plaintiff, which made him enthusiastic as to the working qualities of the buff. According to Churchill's testimony the January and February 1952 distribution activity of

1. Plaintiff contends throughout its argument that the 20–RD Buff, which replaced the 40–RT in August 1952, rather than the latter is the embodiment of the invention of the patent.

the plaintiff was followed by the actual sale of 340 of the 40-RT Buffs subsequent to the March 3, 1952, critical date during the four month period ending in the middle of July 1952.

■ A reasonable period of experimentation wherein the inventor may perfect what he has conceived has long been acknowledged as an exception to the requirement of seasonable disclosure mandated by the policy underlying the provisions of § 102(b). Thus, in Hobbs v. Wisconsin Power & Light Company, 7 Cir., 250 F.2d 100, 108, this Court pointed out:

"A use for experimental purposes is not a public use 'if it is conducted in good faith for the purpose of testing the qualities of the invention and for no other purpose not naturally incident to that'. Walker, Patents, Deller's Edition 347. See also Cline Electric Mfg. Co. v. Kohler, 7 Cir., 1928, 27 F.2d 638, 641."

And, as recently as Koehring Company v. National Automatic Tool Company, Inc., 7 Cir., 362 F.2d 100, 104, we took occasion to observe that the desirability of testing is not disputed:

"[b]ut an inventor or potential patentee may not enjoy the best of two possible worlds. '[H]e must content himself with either secrecy, or legal monopoly.' Metalizing Eng'r Co. v. Kenyon Bearing & Auto Parts Co., [2 Cir., 153 F.2d 516, 520]."

In *Koehring* we condemned as an impermissible public use testing undertaken in an atmosphere of competitive activity and with no injunction of secrecy imposed. Here the use of the buffs solicited of the distributees—"get them tried out" by prospective customers—was, in the language of *Koehring*, likewise "non-secret and commercially-tinged". And the accompanying product claims and price quotations, in the context involved, amply support the court's finding of a placing on sale which invalidates the patent. The statute does not require an actual sale, but only a "placing on sale" of the patented article to render the patent invalid. Armour Research Foundation v. C. K. Williams & Co., 7 Cir., 280 F.2d 499, 506; Akron Brass Co. v. Elkhart Brass Mfg. Co., 7 Cir., 353 F.2d 704, 709. The use made of the buffs by plaintiff's distributors at its solicitation smacks more of a testing of the market for product acceptance rather than a testing of the buff in an experimental use. Cf. Smith & Davis Mfg. Co. v. Mellon, 8 Cir., 58 F. 705, 707.

■ Once a single public use of the operative device embodying the claimed invention—the 40-RT Buff—had been shown the plaintiff had the burden of establishing by full, convincing and unequivocal proof that the use was part of a bona fide program of experimentation. Koehring Company v. National Automatic Tool Company, Inc., supra; Randolph v. Allis-Chalmers Mfg. Co., 7 Cir., 264 F.2d 533, 536. A use involving public disclosure if not *solely* to test the qualities of the invention, and for the purpose of experiment, does not avoid the bar of the statute. Egbert v. Lippmann, 104 U.S. 333, 336, 26 L.Ed. 755. We agree with the District Court that the plaintiff failed to meet the burden of proof imposed upon it. The evidence adduced on this issue does not negate that the unrestricted distribution of free-samples shown was not commercially-tinged—designed, at least in part, to test the buff's acceptance in the market place.

We conclude that the District Court's factual findings are supported by substantial evidence and that the court's conclusions represent the application of correct legal criteria. The judgment order appealed from is affirmed.

Affirmed.