**ROLLER BEARING COMPANY OF AMERICA, Plaintiff,**

v.

**BEARING, INC., Defendant.**

Civ. A. No. 30552.

United States District Court,
E. D. Pennsylvania.

Feb. 2, 1971.

704

Joseph G. Denny, III, and Leonard L. Kalish, Philadelphia, Pa., for plaintiff.

Howson & Howson, Philadelphia, Pa., Foorman L. Mueller, Mueller § Aichele, Vincent J. Rauner, Chicago, Ill., for defendant.

## OPINION

JOHN MORGAN DAVIS, District Judge.

Before the Court is the defendant's Motion for Partial Summary Judgment (Document 127), pursuant to Federal Civil Rule 56, wherein it seeks dismissal of this action as to United States Patent No. 2,884,288 ('288), on the grounds of invalidity.[1]

---

1. The complaint accuses the defendant of infringing Letters Patent 2,865,202 as well as 2,884,288. Prior to the completion of trial of the '202 issues, the defendant filed the instant motion for partial summary judgment directed solely to the '288 patent. By agreement of counsel, the Court subsequently severed trial of the '288 case from the '202 case (see Document 159). Counsel were then permitted to fully brief and orally argue this motion for partial summary judgment.

Specifically, the defendant asserts that the '288 patent is invalid, alleging that several commercial applications were placed on sale or in some cases actually sold to the public on at least five separate occasions, each more than one year prior to the filing of an application for letters patent on August 31, 1951. See 35 U.S.C. § 102(b).[2]

## COMPLIANCE WITH PLEADING AND NOTICE REQUIREMENTS

Preliminarily, the plaintiff asserts that the failure of the defendant to properly plead and give notice of the contemplated defense of invalidity 30 days before trial, as required by 35 U. S.C. § 282,[3] forecloses consideration of this defense. We find this assertion to be without merit.

■ There is substantial authority to the effect that the notice and pleading requirements are inapplicable where the prior use is shown by the patentees' own testimony.

In the instant case, the deposition testimony of Mr. Victor Barr, a co-patentee, together with documents which he prepared as Director of Engineering of the plaintiff Corporation, were substantially relied upon by the defendant in furtherance of this motion. See e. g., depositions of Victor L. Barr dated July 1, 1965, pages 392–394, 404–405; deposition dated February 14, 1964, page 98.

The '288 patent was assigned by Mr. Barr to the plaintiff Corporation. In a similar manner, its Sales Manager, Joseph J. Trainer, furnished substantial information upon which the defendant relies in support of its motion. See e.g. Exhibits A and B to defendant's Motion for Summary Judgment (Document 127). Finally, much information was also furnished by the plaintiff's President, Mr. Raymond Trainer. See e. g. Exhibit 16 to defendant's Motion; his deposition dated February 13, 1964 and specifically, pages 150, 219, 239, 240 and 243. See also inventory records and similar documents maintained by the plaintiff Corporation and identified as Exhibit Nos. 19(a) and (c); 22(a) and (b) to defendant's Motion. Finally, the plaintiff's answers to defendant's requests for admission partially corroborated some of the transactions relied upon by the defendant. See e. g. Admission Nos. 31, 34, 42, 56 (Document 21).

■ The purpose of the well-established pleading and notice requirement set forth in Section 282 is essentially to prevent surprise. Philadelphia and Trenton R.R. Co. v. Stimpson, 39 U.S. (14 Pet.) 448, 459, 10 L.Ed. 535 (1840); Davis Harvester Co. v. Long Mfg. Co., 252 F.Supp. 989 (D.N.C.1956), affirmed, 373 F.2d 513 (4th Cir. 1967). In the instant case, the preponderance of the evidence in support of this motion for sum-

---

2. Section 102(b) states, in relevant part, as follows:

    A person shall be entitled to a patent unless
    *     *     *     *     *
    (b) the invention was * * * in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, * * *.

3. Section 282 states in relevant part that:

    A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it.
    The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:
    *     *     *     *     *
    (2) Invalidity of a patent or any claim in suit on any ground specified in part

II of this title as a condition for patentability.

*     *     *     *     *

In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of * * * the name and address of any person who may be relied upon * * * as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit. In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires.

mary judgment was elicited from either the co-patentee, the corporate assignee, or the corporation's own officers. The plaintiff can not now be reasonably heard to assert that it was in any way "surprised" by information which it itself furnished. See Paddies, Inc. v. Broadway Dept. Stores, 147 F.Supp. 373 (S.D.Cal.1956), and cases cited therein at p. 375.

This conclusion is further strengthened by the fact that on November 5, 1965, this Court entered a pre-trial Order (document 51) authorizing the defendant to amend its pre-trial memorandum (document 49), "* * * [To] add the following defenses: (a) invalidity of patent No. 2,884,288 * * * based on prior public use-offer for sale and sale of the bearings more than one year prior to the date of the filing of the patent." This was two and one half years prior to the filing of the defendant's Motion for Partial Summary Judgment.

We agree with the plaintiff that the notice and pleading provisions of Section 282 equally pertain to motions for summary judgment. However, in addition to the reasons set forth above, we note that the defendant filed its motion on July 6, 1968. As required by the Federal Civil Rules, the motion set forth the affidavit, documents and exhibits and other pleadings upon which the defendant would rely. The oral argument was conducted over 60 days later. In the interim, the plaintiff was given ample opportunity to obtain and submit any material in reply thereto. Thus, the plaintiff actually received well over the 30 day period prescribed by the aforementioned statute.[4]

We accordingly conclude that there was sufficient compliance by the defendant with the pleading and notice provisions of Section 282 to permit consideration of this Motion for Summary Judgment.

## INCIDENTS OF PRIOR SALE

The defendant principally relies upon five transactions involving either the sale or the offer to sell roller bearings, which were admitted to be commercial applications of the claims in suit.[5]

In each instance the plaintiff does not dispute that its bearings were conveyed to its customers, but would characterize the transactions as "tests" or merely for "experimental use." Principal reliance is placed by the plaintiff upon City of Elizabeth v. Pavement Co., 97 U.S. 126, 24 L.Ed. 1000 (1878). In this decision the Supreme Court essentially recognized that bona fide test or "experimental use" of an invention is an exception to the public use bar.

■ As a general rule this exception is applicable if the experiment is conducted in good faith for the purpose of testing the qualities of the invention, and for no other purpose "not naturally incident to that [use]." Hobbs v. Wisconsin Power and Light Co., 250 F.2d 100, 108 (7th Cir. 1957) cert denied. 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958). More specifically, the plaintiff asks this Court to consider the following guidelines in determining whether the experimental or test-use exception is applicable:

1. Where the prime object of the invention is to increase reliability and

---

4. Parenthetically, we note that both counsel were given leave to file responsive memoranda after oral argument. The plaintiff took advantage of this offer by submitting two additional affidavits (Edward J. Hrdlicka and Raymond E. Trainer), as well as the inclusion of additional references to excerpts from depositions. See p. 3 et seq of plaintiff's reply memorandum, filed Oct. 11, 1968.

5. Claims 1, 2, 4, 5, 7, 9 and 10 of the '288 patent are in suit. In admission No. 78

(document 21) the plaintiff had essentially admitted that each of the plaintiff's commercial bearings with the following designation encompass the structure of the claims set forth above: SJ–7153, SJ–7194, SJ–9688 and SJ–74197. At no time has the plaintiff asserted that the aforementioned roller bearing models are *not* the commercial applications of the claims of '288 patent which are in suit.

durability over the existing art, the permissible test-use may extend over a longer period. City of Elizabeth, supra, 97 U.S. at p. 135, 24 L.Ed. 1000;

2. The experimental test-use may be in the premises of another. City of Elizabeth, supra at p. 135, 24 L.Ed. 1000;

3. The experimental or test-use may be in public view. Universal Marion Corporation v. Warner and Swasey Co., 354 F.2d 541 (10th Cir. 1965), cert. denied, 384 U.S. 927, 86 S.Ct. 1444, 16 L. Ed.2d 530 (1966); and

4. Where a specimen of an invention is built or made to order, it is not "on sale" until it is completed, delivered or accepted; citing *inter alia*, Walker on Patents, Vol. 2 §§ 147 and 148.

The individual transactions involved will now be examined.

### The HYDRECO Transactions

The defendant has rather comprehensively documented the transactions between the plaintiff and one of its principal customers, the Hydraulic Equipment Co. (HYDRECO) which had been actively seeking a roller bearing of longer life for use in heavy-duty pumps which were commonly installed in earthmoving and heavy construction equipment. After extensive preliminary negotiations,[6] 20 bearings were delivered to HYDRECO on March 29, 1950 which bore the designation SJ–74197. The comparatively small quantity was dictated by the fact that HYDRECO desired to subject this bearing to testing, both in their plant and in the field, prior to converting from their present (albeit unsatisfactory) bearing to the SJ–74197. See Exhibits 21 B and D. The plaintiff asserts that this transfer was merely a continued implementation of its (plaintiff's) testing program. The bearings were given gratis to HYDRECO and were not placed into any pumps destined for sale.

It is clear, however, from various documents submitted by the defendants, that the principal intent of R.B.C. was not merely to obtain additional test results, but to convince HYDRECO of the reliability of the SJ–74197. It was anticipated that the test results, if favorable, would culminate in further sales. This rather conclusively appeared in a memorandum from R.B.C's sales representative handling the HYDRECO account to the R.B.C. Sales Department. See Exhibit 21A:

> It was agreed by Ray [Trainer, the President of RBC] that we should make a pass at Ed. Hrdlica [Vice Pres. and General Manager of HYDRECO with supervision over engineering] on the proposition of our replacing their stock of these bearings [the full-complement type] which had proven unsatisfactory with the new cage-type bearing [SJ–74197] * * *

In a deposition, Mr. Trainer indicated that on March 30, 1950, he visited HYDRECO and delivered some SJ–74197 samples:

> I would say that that was the main purpose, to deliver the samples and to use our selling efforts to interest them in it, because at that time we were competing with a Stallman [full-complement] bearing.
>
> Q. And your efforts to interest HYDRECO were for use in their equipment?
>
> A. Yes, sir. In their pumps. (Trainer deposition dated Feb. 13, 1964, page 209. See also p. 150).

The evidence of the HYDRECO transactions rather comprehensively substantiates the defendant's assertion that the efforts of R.B.C. can only be characterized as sales overtures. In J. L. Clark Manufacturing Co. v. American Can Co. 256 F.Supp. 719 (D.N.J.1966), a similar situation was presented. About one month before the critical date, the plaintiff had rather vigorously embarked

---

6. The results of these negotiations were preserved in a diary kept by plaintiff's President (See Exhibit 16), and intra-corporation memos (See Exhibits 21 A, B and D).

upon a sales campaign by way of personal visits, correspondence, telegrams, etc. Ten days before the critical date, samples were mailed to prospective customers. The samples were not production items; they were *specifically* made for this purpose, although they were completely operative prototypes. The first firm order was placed *after* the critical date; however, the court had little difficulty in concluding that the plaintiff "was soliciting purchase orders, not advice." *Clark, supra,* at p. 735.

■ There is little doubt that R.B.C. was *additionally* interested in the results of the initial HYDRECO testing. However, the mere delivery of a product to a prospective customer with full knowledge that the product will be subjected to acceptance testing does not in itself require application of the City of Elizabeth exception. In United States Chemical Corp. v. Plastic Glass Corp., 142 F. Supp. 840 (D.N.J.1956) [7] the court observed, at page 844:

> But if the use is primarily for the purpose of profit, with the experimentation being only incidental, for a period more than one year prior to the application for a patent, it comes within the prohibition of the statute.

As in *Plastic Glass,* there has been no indication by the plaintiff that its motivation in forwarding the initial twenty bearings to HYDRECO was *primarily* for the purpose of continuing its program of experimentation. Nor has there been any indication or assertion by the plaintiff that it was placing any limitation upon the use by HYDRECO of the twenty bearings. Tool Research and Engineering Corp. v. Honcor Corp.,

367 F.2d 449 (9th Cir. 1966); George R. Churchill Co. v. American Buff Co., 365 F.2d 129 (7th Cir. 1966).

■ Similarly, the fact that the twenty SJ–74197 bearings were delivered to HYDRECO without charge is of itself not determinative. If an inventor allows his invention to be used by other persons prior to the critical date either with or without compensation, it will be regarded as in the "public use." O'Brien v. Westinghouse Electric Corp., 293 F.2d 1 (3rd Cir. 1961).

■ The one transaction involving twenty bearings SJ–74197 would alone be sufficient to invalidate the patent. Smith and Griggs Manufacturing Co. v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 31 L.Ed. 141 (1887); Atlas v. Eastern Airlines, 311 F.2d 156 (1st Cir. 1962).[8]

However, there is ample additional evidence, properly documented, of other transactions involving HYDRECO. After examining and testing the aforementioned twenty bearings, the Vice-President and General Manager of HYDRECO authorized the ordering of 5,000 additional bearings " * * * in order to have bearings available for four-bolt, 3000 series pumps, [during] the latter part of August [1950]." See Exhibit 21 E. This was formally submitted to R. B.C. via purchase order. R.B.C. admits receiving this order on June 30, 1950, two months *before* the critical date. See Admission 42 (document 21).

■ While the plaintiff does not dispute the fact that it received the order before the critical date, it contends that this transaction should not be considered, since the first shipment of SJ–74197 bearings did not commence until

---

**7.** Affirmed, 243 F.2d 892 (3rd Cir. 1957). The reasoning set forth in Metallizing Engineering Company v. Kenyon Bearing and Auto Parts, 153 F.2d 516 (2nd Cir. 1946), was expressly adopted by the Court of Appeals in *Plastic Glass.*

**8.** In *Atlas,* only one asserted instance of public use 13 months before the date of the patent application, was regarded as sufficient to invalidate the patent. This decision is especially significant, since the plaintiff in the instant case would similarly characterize its public use as "experimental."

The court in *Atlas* additionally noted at p. 161 that the mere conclusory description of an activity as "experimental" is not *per se* sufficient to raise a question of material fact so as to preclude the granting of a motion for summary judgment without further examination of the facts on the record.

one day *after* the critical date. We find this contention to be equally without merit. It is clear that the proper standard is whether the item has been placed "on sale" by the patent holder before the critical date. The fact remains that the "sale" had been completed at least as early as the date the purchase order was accepted by R.B.C. Tool Research Engineering Corp. v. Honcor Corp., 240 F. Supp. 296 (S.D.Cal.1964), aff'd. 367 F. 2d 449 (9th Cir. 1966).

█ In Philco Corp. v. Admiral Corp., 199 F.Supp. 797 (D.C.Del.1961) the Court properly reasoned that an actual sale is not necessary to bring Section 102(b) into play.[9] An *offer* to sell is quite sufficient, citing *inter alia* Magee v. Coca-Cola Co., 232 F.2d 596 (7th Cir. 1956); Chicopee Mfg. Corp. v. Columbia Fiber Mills, Inc., 165 F.Supp. 307 (M.D.Ga.1958). It follows then, that once R.B.C. committed itself to supply five thousand SJ–74197 bearings by accepting the HYDRECO purchase order, it had progressed further than merely an *offer* to sell; essentially it had entered into a "sale" for the purposes of Section 102(b). Its action can only be regarded as an unequivocal manifestation of its intent to sell the bearings in question. The Hrdlica affidavit submitted in rebuttal by the plaintiff (document 131) strengthens our finding that the five thousand SJ–74197 bearings were purchased not as part of a continued experiment on behalf of the plaintiff, but for ultimate use in production. Whether the *purchaser* intends to further subject the product to testing is not the standard. Tool Research Engineering Corp., *supra*. Thus although Mr. Hrdlica indicated that "it was our practice to test a new type or style component * * *", he added that this was

accomplished " * * * before we adopted it into our production pumps." Similarly, the fact that Hrdlica "had in mind" cancelling the order if the tests later proved unsatisfactory, does not negate a finding that the bearings were ultimately sold for commercial purposes. Succinctly stated, the sale was clearly "commercially tinged." George R. Churchill Co. v. American Buff Co., *supra*, 365 F.2d at p. 134.

Appended to the Hrdlica affidavit was a HYDRECO memorandum which indicated that:

* * * ordinarily we [HYDRECO] would not go out on a limb for the R. B.C. bearings, if it were not for the probable condition of not having any bearings whatsoever for 4 bolt pumps.

█ To recapitulate, we expressly find that the preliminary negotiations with HYDRECO during the first three months of 1950 were manifestations of R.B.C.'s intention to place its SJ–74197 bearings on sale.

We further find that the delivery of twenty SJ–74197 bearings in March of 1950 was an actual sale within the meaning of Section 102(b).

Similarly, the transaction culminating in the acceptance by R.B.C. of the HYDRECO purchase order in June of 1950 for five thousand additional SJ–74197 bearings also amounted to a "sale" for the purposes of Section 102(b).

The remaining transactions with other original equipment manufacturers follow a rather similar pattern as the HYDRECO transactions, set forth above. Initially, the engineering and sales personnel would contact prospective purchasers. The account would then obtain an initial quantity of one or more variations of a cage-type bearing, all of which are uncontroverted commercial

9. In *Philco*, the "sale" was far more tenuous than in the instant case. The only item available was a mock-up of the contemplated production model, since no functionally operative model had yet been manufactured. Before the critical date, the buyer had merely indicated the general quantity desired. No prices had been established. Also, there had not been any purchase order or other document forwarded to the seller until five weeks *after* the critical date. Notwithstanding these facts, the Court had little difficulty in concluding that the patent holder subjectively intended to place the product on sale, thus invalidating the patent.

applications of the '288 patent claims in suit. The initial quantity would usually then be tested. Some follow-up orders of production quantity would then be forwarded to R.B.C., although not necessarily before the critical date of August 30, 1950.

### The Galion Transaction

On August 2, 1950, R.B.C. shipped fifty of its SJ–7194 bearings to the Galion Iron Works. This was charged against an "open production order" of a different bearing. See Trainer Deposition of June 29, 1965, p. 260. Galion was billed $53.50 for these bearings.

Plaintiff again contends that Galion merely desired to "test" these bearings; that the testing was never completed and that the bearings were ultimately returned. However, it is clear that the motivation of R.B.C. was not merely to experiment, but to attempt to develop the Galion account:

> * * * we [R.B.C.] were anxious to have some of our Pitchlign bearings, our SJ–7194 tested [by Galion] in order to prove their superiority and *to regain the account*" [emphasis supplied]. (Trainer deposition of June 29, 1965, p. 260, document 57).

The fact that the tests later were abandoned and the bearings were returned is of no particular significance here, as the decisional law recited in the initial portion of this Opinion would indicate. The fact that R.B.C. was motivated by a desire to "regain the account" is conclusive evidence of its commercial intent. Similarly, whether the *purchaser* "actually approved" the bearing prior to the critical date is not a conclusive factor for purposes of ascertaining the application of Section 102(b). By attempting to regain the account via the SJ–7194, the plaintiff was clearly engaged in commercial exploitation of its invention. Metallizing Engi-

neering Co. v. Kenyon Bearing and Auto Parts Co., *supra.*

### The McCulloch Transaction

On April 17, 1950, six SJ–7153 bearings were delivered by R.B.C.'s California sales representative to McCulloch Motors, Inc. The bearings, although hand-made, were part of a standard production series. Again, Mr. Trainer, the President of R.B.C., indicated in his deposition of February 13, 1964 that:

> * * * we had been selling McCulloch our Cyclops' type needle bearing. They were having problems, as many other users of the full complement type bearing were having, and since we were in a developing process of the Pitchlign bearing, we thought that the SJ–7153 might be of considerable assistance to them in overcoming the difficulties. * * *
>
> Q. And were these six samples * * * delivered for the purpose of interesting McCulloch to go to the cage-type [Pitchlign] and substitute those for the full complement Cyclops type?
>
> A. Yes, sir. That was the object of the call. (Document 23, pp. 223, 224)

There has been no evidence presented by the plaintiff which would indicate that this was merely "experimental" within the meaning of *City of Elizabeth, supra,* and subsequent decisions of similar import.[10]

### Additional Transactions

There is some evidence that four SJ–7153 bearings were left with the Brown and Sharpe Co. during a visit by R.B.C. engineering sales representatives. Although there is some evidence that this visit was designed to elicit some sales activity in the SJ–7153, the documentary evidence is not sufficiently conclusive.

Similarly, although the R.B.C. inventory cards reflect orders received for

10. In this regard, we recognize that the defendant has the burden of proving that the use or sale of the subject bearings were "public." Aerovox Corp. v. Polymet Manufacturing Corp., 67 F.2d 860, 862 (2nd Cir. 1933). However, once public use or sale is proved, the *plaintiff* has the burden of proving that the use was experimental. Robine v. Apco, Inc., 386 F.2d 267 (2nd Cir. 1967).

625 SJ–9688 bearings, before the critical date, evidence is again insufficient in itself for concluding that a prior sale transpired. Both matters however, indicate that R.B.C.'s sales personnel as well as their production records were certainly in a commercial posture for placement "on sale" with regard to the bearings in question.

However, our findings and conclusions regarding the HYDRECO, Galion and McCulloch transactions form sufficient bases to require the entry of summary judgment for the defendant, under 35 U.S.C. § 102(b), as to Patent Number 2,884,288 only, in accordance with Federal Civil Rule 56.

Accordingly, the defendant's Motion for Partial Summary Judgment is hereby granted.